# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CARMEN RODRIGUEZ,<br><br>　　　　　　　**Plaintiff,**<br><br>　　　v.<br><br>**NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,**<br><br>　　　　　　　**Defendant.** | Civ. No. 17-6884-KM<br><br>**OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

Plaintiff Carmen Rodriguez brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims to Disability Insurance Benefits ("DIB") under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401-34. Rodriguez raises four principal issues in this appeal.

First, Rodriguez argues that the Administrative Law Judge ("ALJ") should have considered her application for Supplemental Security Income ("SSI") disability benefits. The ALJ's decision was constrained to Rodriguez's DIB claim. Rodriguez admittedly received an initial denial of her SSI. Rodriguez has provided no evidence, nor is there any evidence in the Administrative Record, that Rodriguez appealed the initial denial, despite receiving the notice and instructions on how to appeal.

Rodriguez next challenges the ALJ's failure to consult with a medical advisor, as required under certain circumstances under Social Security Ruling ("SSR") 83-20. Finally, Rodriguez argues that the ALJ improperly omitted her "non-severe" impairments when determining her Residual Functional Capacity ("RFC") and constructed a faulty hypothetical to the vocational expert.

For the reasons stated below, the decision of the Commissioner is affirmed.

## I.    Background[1]

Rodriguez seeks to reverse the ALJ's finding that she did not meet the Social Security Act's definition of disabled from February 23, 2012, the alleged onset date, through the Date Last Insured ("DLI"), March 31, 2012. (R. 34).

On July 12, 2013, Rodriguez applied for DIB, alleging a disabling condition that began on February 23, 2012. (R. 82-83, 194). Rodriguez attributed her disability to depression, high blood pressure, sleeping problems, pain, and arthritis in her back. (R. 219). Her application was initially denied on September 10, 2013 (R. 88-89), and upon reconsideration on March 19, 2014. (R. 90-99).

On December 11, 2015, Rodriguez appeared before the ALJ with an attorney and testified. (R. 23). Christian Boardman, a vocational expert ("VE"), also testified. (*Id.*).

On April 21, 2016, the ALJ issued a decision finding that Rodriguez is not disabled within the meaning of the Social Security Act. (R. 23-34). The ALJ concluded that Rodriguez's affect disorder/depression was a severe impairment, but not of listing-level severity. (R. 25-27). The ALJ determined that Rodriguez, given her Residual Functional Capacity ("RFC"), was able to perform past relevant work. (R. 27-34).

## II.    Standard

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir.

---

[1]    Citations to the record are abbreviated as follows:

"DE _"    =    Docket entry in this case;

"R. _" =    Administrative Record (DE 5) (The cited page numbers correspond to the number found in the bottom right corner of the page for all DE 5 attachments);

"PBr." =    Brief in Support of Plaintiff Rodriguez (DE 10);

"DBr." =    Defendant Social Security Administration's Opposition Brief (DE 14);

"DABr." =    Defendant's Amended Opposition Brief (DE 15).

1987); 42 U.S.C. § 423 (d)(1) (1982). Additionally, the claimant must show that she had disability insured status at the time she became disabled or that she attained this status at some point during her disability. 42 U.S.C. §§ 416(i)(1), 423; 20 C.F.R. § 404.131.

### A. The Five-Step Process and This Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step Three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis). If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the RFC to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see*

3

*Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

When there is substantial evidence to support the ALJ's factual findings, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007); *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000).

## B. The ALJ's Decision

The ALJ followed the five-step process in determining that Rodriguez was not disabled from February 23, 2012, the alleged onset date, through the DLI, March 31, 2012. The ALJ's findings may be summarized as follows:

**Step 1:** At step one, the ALJ determined that Rodriguez had not engaged in substantial gainful activity from the alleged onset date of February 23, 2012 through the DLI of March 31, 2012. (R. 25).

**Step 2:** At step two, the ALJ determined that Rodriguez had a severe impairment, affect disorder. (R. 25).

The ALJ also addressed Rodriguez's alleged back problems. Based on the medical records, the ALJ determined that there was insufficient medical evidence that Rodriguez suffered from a medically determinable impairment prior to the DLI. (R. 25). In March of 2011, Rodriguez had complained of generalized back pain, but an examination revealed no abnormal findings. (R. 25). Rodriguez did not report back pain again until March 5, 2013 and had indicated that she had had lower back pain for the previous two weeks — almost one year after the DLI. (*Id.*). She further indicated that she had no prior history of back pain. (R. 26).

Regarding Rodriguez's diabetes, the ALJ determined that it was not severe. (R. 26). While Rodriguez had been diagnosed with diabetes mellitus prior to the DLI, and treatment records indicated "uncontrolled" blood sugars at times, "no limitations were associated." (*Id.*). Rodriguez was never hospitalized because of her diabetes, nor did she suffer from any organ damage, neuropathy, retinopathy, or any other clinical abnormalities. (*Id.*).

Finally, the ALJ addressed Rodriguez's hypertension, concluding that it also was not severe (R. 26). The medical evidence in the record established that Rodriguez's hypertension was "essentially controlled." (*Id.*). Rodriguez was not hospitalized, has not suffered form organ damage, and examination revealed normal findings. (*Id.*).

**Step 3:** At step three, the ALJ determined that Rodriguez did not have an impairment, or combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1. (R. 26-27). In measuring the severity of an impairment, the ALJ referred to Section 12.04 ("Affective Disorders") of Appendix 1. (*Id.*).

To meet the severity requirement, a claimant's impairment must result in an extreme limitation of one, or a marked limitation of two, of the four Paragraph B areas under Section 12.04: daily living; social functioning; concentration, persistence, or pace; and decompensation. (*Id.*).

The ALJ concluded that Rodriguez's impairment did not cause at least two "marked" limitations, or one "extreme" limitation, under the Paragraph B criteria. The ALJ determined that Rodriguez did not meet a marked limitation in any of the four areas evaluated under Section 12.04. (R. 26-27). Instead, all the areas were deemed "mild," except for "concentration, persistence, or pace." The ALJ determined the Rodriguez had "moderate" limitations in that area.

**Step 4:** At step four, the ALJ concluded that Rodriguez has the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple and routine tasks for which production is measured no earlier than the end of the workday." (R. 27). The ALJ further determined that Rodriguez "will be off-task 10% of the workday due to impairments." (*Id.*).

The ALJ also concluded that Rodriguez can perform past relevant work, including work as a warehouse worker and label coder. (R. 32).

**Step 5:** Because the ALJ concluded that Rodriguez could perform past relevant work, the ALJ did not need to reach Step 5. However, the ALJ made "alternative findings" under Step 5 because "there are other jobs existing in the national economy that [Rodriguez] is also able to perform." (R. 33).

In making these findings, the ALJ considered Rodriguez's age (51), level of education (marginal), work experience, and inability to communicate in English, in conjunction with the Medical-Vocational Guidelines. (R. 33). Relying on the testimony of the VE, the ALJ identified several representative unskilled

6

jobs Rodriguez could perform despite her limitations: (1) marker (Director of Occupational Titles ("DOT") #209.587-034); (2) routing clerk (DOT #222.687-022); and (3) ticketer textile (DOT #229.587-018). (R. 33-34). The ALJ also determined, based on expert's testimony, that a significant number of these jobs were available nationally. (R. 34).

Accordingly, the ALJ concluded that Rodriguez was not under a disability, as defined in the Social Security Act, from February 23, 2012 through March 31, 2012. (R. 34).

### III. Discussion

#### A. Reviewability of SSI Application

Rodriguez first points to, what she calls, a "procedural error." (PBr. at 11). She claims that in addition to filing a claim for DIB benefits, she also filed a claim for SSI benefits. (PBr. at 11). Rodriguez asserts that the ALJ's failure to consider her SSI application requires reversal of the ALJ's determination and a remand for consideration of the SSI application. (PBr. at 15).

Defendant responds that Rodriguez never appealed the initial denial of her application for SSI, and therefore, that the issue was never raised before the ALJ and is also not properly before this Court. (DABr. at 3-4).

The exclusive jurisdictional basis for judicial review of Social Security cases derives from 42 U.S.C. §§ 405(g), (h), and 1383(c)(3).

> Any individual, *after any final decision of the Commissioner of Social Security made after a hearing* to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow....
>
> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. *No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided.* No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under

section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(g), (h) (emphasis added). The same rule applies to SSI cases. 42 U.S.C. § 1383(c)(3).

The statutes thus "clearly" limit" judicial review" in claims arising under the Social Security Act "to a particular type of agency action, a 'final decision of the Commissioner of Social Security made after a hearing.'" *Califano v. Sanders*, 430 U.S. 99, 108, 97 S. Ct. 980, 986 (1977); *see Sims v. Apfel*, 530 U.S. 103, 107, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000).

A "final decision" is defined through agency regulations rather than statutory text. *See Weinberger v. Salfi*, 422 U.S. 749, 766-767, 95 S. Ct. 2457, 45 L. Ed. 2d 522 (1975); *see Bacon v. Sullivan*, 969 F.2d 1517, 1520 (3d Cir. 1992). The Social Security Act's regulations set forth a multi-step process by which a claimant achieves a final decision subject to judicial review. 20 C.F.R. § 404.1400(a); *see Callender v. Soc. Sec. Admin.*, 275 Fed. App'x 174, 175 (3d Cir. 2008).

First, the Social Security Administration ("SSA") issues an "initial" determination as to the claimant's eligibility or continued eligibility for benefits. 20 C.F.R. § 404.1400(a)(1). If denied, a claimant may then request reconsideration in writing within 60 days of his or her receipt of the notice of the initial determination. 20 C.F.R. §§ 416.1400(1)(2); 416.1407; 416.1409.

If "dissatisfied" with the result of the reconsideration, the claimant may once again appeal after receipt of the decision, this time by requesting a hearing before an ALJ. 20 C.F.R. §§ 416.1400(a)(3), 416.1414. Within 60 days of an unfavorable decision by an ALJ, the claimant may apply for review by the Appeals Council. 20 C.F.R. §§ 416.1400(a)(4), 416.1468.

Review by the Appeals Council is discretionary, but the claimant must nonetheless petition for review in order to receive a final decision. 20 C.F.R. § 416.1481; *see also Sims*, 530 U.S. at 107. If the Appeals Council elects to review the claim, its decision is considered the "final" decision subject to

federal court review. *Id.* If the Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner, and the case is also ripe at that time for judicial review. *Id.*; 20 C.F.R. §416.1400(5).

A final decision within the meaning of 42 U.S.C. § 405(b) ripens upon exhaustion of these administrative levels of review. 20 C.F.R. §416.1400(5). Exhaustion of the administrative process also results in a "final" decision that is reviewable by this Court. Ordinarily, judicial review is barred absent a "final decision" by the Commissioner of Social Security. *Fitzgerald v. Apfel*, 148 F.3d 232, 234 (3d Cir. 1998).

The "final decision" requirement consists of two elements, only one of which — the requirement that a claim for benefits be presented to the Commissioner — is purely "jurisdictional" in the sense that it cannot be waived by the Commissioner. *See Fitzgerald*, 148 F.3d at 234; *Callender*, 275 F. App'x at 175. "The waivable element is the requirement that the administrative remedies prescribed by the Commissioner be exhausted." *Callender*, 275 F. App'x at 175. If a plaintiff's claim is collateral to her claim for benefits, exhaustion may be waived under certain circumstances. *Id.*; *see Pallotta v. Barnhart*, 144 F. App'x 938, 941 (3d Cir. 2005). Courts have recognized that colorable claims of constitutional violations, such as due process violations resulting from lack of adequate notice, can confer federal court jurisdiction despite their not having been the subject of a "final" decision. *See Califano*, 430 U.S. at 108-09; *Pallotta*, 144 Fed. App'x at 941; *Van Williams v. SSA*, 152 F. App'x 153, 155 (3d Cir. 2005); *Bacon*, 969 F.2d at 1520-22.

Rodriguez filed an application for SSI on July 12, 2013, the same date she filed an application for DIB. (R. 198-203). On July 19, 2013, the SSA issued a notice of denial. (R. 102). That notice advised Rodriguez of the basis of the denial and gave her notice of her appeal rights. (R. 102-109). The notice further provided instructions on how to appeal, including the timeframe for appeal, where to locate the forms to appeal, and how to file the appeal forms. (R. 102-109).

Rodriguez admits that she received this notice of denial. (PBr. at 14 n.5 ("Indeed, plaintiff did receive an initial denial on her SSI application on July 19, 2013.")). She retained counsel on August 13, 2013, before the expiration of the sixty day period to appeal. (R. 110-11). Rodriguez does not contend, or otherwise offer any proof, that she filed an appeal of her SSI benefits that should have been reviewed by the ALJ.[2]

Because Rodriguez did not appeal the initial determination, she failed to exhaust her administrative remedies according to 20 C.F.R. § 416.1400(a), and there is no "final" decision. This Court, therefore, lacks jurisdiction to review whether the SSI application was properly denied. See Sims, 530 U.S. at 107.

Moreover, Rodriquez's claim before this Court is not collateral to her claim for benefits. Rodriguez complaint is limited to the denial of DIB. (DE 1). She has made no claim involving the alleged violation of any constitutional rights that would justify waiving the exhaustion requirement.[3] Because

---

[2]    The SSA regulations provide claimants reprieve from the sixty-day deadline for filing an appeal. 20 C.F.R. § 416.1411. That provision requires that the claimant demonstrate "good cause" for an untimely filing, and further provides a list of circumstances which may constitute "good cause." Id. Rodriguez has not asserted that good cause existed for her complete failure to file an appeal, nor do the facts as asserted before this Court or in the record fit into one of the circumstances listed in the regulations. See 20 C.F.R. §416.1411(b).

[3]    In this appeal, Rodriguez contends that she received the notice only in English, which inevitably would have impacted her ability to read and understand the contents of the notice. (PBr. at 14 n.5). That contention, however, is not supported by any documentary evidence in the record or by a sworn declaration. Instead, that factual allegation is advanced only by Rodriguez's counsel's briefing. Versarge v. Twp. of Clinton N.J., 984 F.2d 1359, 1370 (3d Cir. 1993) ("[U]nsubstantiated arguments made in briefs or at oral argument are not evidence to be considered by this Court.").

    In contrast, the SSA contends that it sent the denial notice to Rodriguez in both Spanish and English. (DABr. at 4 (citing R. 106)). The SSA's citation to the record, however, is to the notice in English. (DABr. at 4 (citing R. 106)). While there are documents in the record that clearly were translated into Spanish (R. 112 (September 10, 2013 denial), 128-130, 139-40, 147-53), it is not apparent that SSA sent the notice of denial of SSI benefits to the claimant in Spanish. In this Court's opinion, notice in both English and Spanish would be the better practice, simply because Spanish, although one of many, is one of the more commonly spoken non-English languages in this country. Rodriguez has not, however, asserted a constitutional violation from her failure to receive the notice in her first language. Cf. Soberal-Perez v.

Rodriguez has not obtained a "final" decision on her SSI application, judicial review of that SSI application is barred. I turn to the DIB decision.

## B. Disability Onset Date and Failure to Consult Medical Advisor

Rodriguez first argues that the ALJ was required, pursuant to Social Security Ruling ("SSR") 83-20 and Social Security Administration Hearings, Appeals and Litigation Law Manual (HALLEX) I-2-5-34(A)(2), 1994 WL 637370, to consult with a medical expert to determine the onset date of disability. (PBr. at 18-32). Rodriguez argues that the ALJ's failure to comply with SSR 83-20 in evaluating Rodriguez's back impairments, hypertension, and diabetes resulted in the erroneous conclusion that they were not severe or medically determinable impairments established prior to the DLI.

The Commissioner argues that SSR 83-20 is not relevant here because that Ruling only applies to fix an onset date in cases where a finding of disability has already been made. (DABr. at 11-12). The Commissioner further argues that medical records established that Rodriguez did not have a disabling impairment from these conditions during the relevant time period. (DABr. at 12-13).

The ALJ determined, and the parties do not dispute, that based on Rodriguez's work history, the DLI is March 31, 2012. Therefore, to be entitled

---

*Heckler*, 717 F.2d 36 (2d Cir. 1983), *cert. denied*, 466 U.S. 929, 104 S. Ct. 1713, 80 L. Ed. 2d 186 (1984) (holding that due process does not require the Commissioner to provide written notices and information in Spanish to social security claimants and "placing the burden of diligence and further inquiry on the part of a non-English-speaking individual served in this country."); *see Alfonso v. Bd. of Review*, 89 N.J. 41, 444 A.2d 1075, 1077, *appeal dismissed*, 459 U.S. 806 (1982) ("The courts have recognized, whether explicitly or implicitly, that in an English-speaking country, requirements of 'reasonable notice' are satisfied when the notice is given in English."); *Hernandez v. Dep't of Labor*, 83 Ill. 2d 512, 416 N.E.2d 263, 266-67, 48 Ill. Dec. 232 (1981) (unemployment insurance termination notices written only in English held constitutionally adequate, and, therefore, failure to seek timely review of termination was fatal to claim); *Dalomba v. Dir. of Div. of Emp't Sec.*, 369 Mass. 92, 337 N.E.2d 687, 689-91 (1975) (same); *see also Guerrero v. Swoap*, 414 U.S. 1137, 38 L. Ed. 2d 762, 94 S. Ct. 883 (1974) (welfare termination notices in English only held constitutional); *Carmona v. Sheffield*, 475 F.2d 738, 739 (9th Cir. 1973) (holding that notices related to denials of unemployment benefits sent in English to non-English speaking applicants did not violate due process).

to disability benefits, Rodriguez was required to show that she became disabled before this date. *See Perez v. Comm'r of Soc. Sec.*, 521 F. App'x 51, 54 (3d Cir. 2013).

An individual is "disabled" within the meaning of the Social Security Act if he or she can show that "there is some medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory twelve-month period." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003) (internal quotation marks omitted); *see also* 42 U.S.C. § 423(d)(1)(A). However, under 42 U.S.C. § 423(a)(1)(A) and (c)(1), a claimant is only eligible to receive DIB if she was insured under the Act at the time of the onset of her disability. *See* 20 C.F.R. §§ 404.130, 404.315(a); *Kane v. Heckler*, 776 F.2d 1130, 1131 n.1 (3d Cir. 1985); *Perez*, 521 F. App'x at 54. Thus, a claimant's eligibility for DIB is dependent on an onset date that pre-dates, or is the same as, the DLI. *See id.*

SSR 83-20 "recognizes that with slowly progressive impairments, including mental impairments, 'it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling.'" *Moncur v. Comm'r of Soc. Sec.*, Civil Action No. 17-4811 (ES), 2018 U.S. Dist. LEXIS 187934, at *10 (D.N.J. Nov. 2, 2018) (quoting *Spellman v. Shalala*, 1 F.3d 357, 361 (5th Cir. 1993)). SSR 83-20 allows the ALJ to infer the onset date by consulting with a medical advisor when an impairment is "slowly progressive," the alleged onset date and date of last employment are well in the past, and the medical records are insufficient for the time period in question. *See Walton v. Halter*, 243 F.3d 703, 709 (3d Cir. 2001) (citing SSR 83-20); *see also Guerrero v. Comm'r of Soc. Sec.*, No. 05-cv-1709 (FSH), 2006 WL 1722356, at *5 (D.N.J. Jun. 19, 2006) (noting that SSR 83-20 permits ALJ to call medical expert to infer actual onset date "where the impairment is slowly progressing, the alleged onset date is far in the past, and adequate medical records for the most relevant period are not available." (citations omitted)), *aff'd*, 249 F. App'x 289 (3d Cir. 2007).

"The starting point in determining the date of onset of disability is the individual's statement as to when disability began." 1983 SSR LEXIS 25, *4. The date alleged by the claimant should be used by the ALJ if it is consistent with the evidence available. 1983 SSR LEXIS 25, *6. However, where the alleged onset date is not consistent with the claimant's work history or the medical and other evidence of record, the ALJ is required to infer an onset date. *Id.*

The Third Circuit has reversed an ALJ's determination of an onset date where there was "no legitimate basis for the conclusion of the ALJ on the onset issue" and where the ALJ opted to rely "on his lay analysis of the evidence" rather than "call upon the services of a medical advisor" pursuant to SSR 83-20. *Walton*, 243 F.3d at 709; *see also Newell*, 347 F.3d at 549.

Subsequent case law has interpreted the directive of *Walton* and *Newell* to apply, not in every case, but only where (1) the impairment at issue becomes progressively worse over an extended period of time and (2) the ALJ must infer the onset date based on unclear or nonexistent medical records. *See Perez,* 521 F. App'x at 56-57 (SSR 83-20 generally applies "where medical evidence from the relevant period is unavailable."); *Yots v. Comm'r of Soc. Sec.,* 704 F. App'x 95, 97 (3d Cir. 2017) (SSR 83-20 applies "where the record contain[s] no evidence to substantiate or contradict a claimant's subjective testimony as to pain and impairment."); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 618 (3d Cir. 2009) ("As the District Court noted, further decisions of our court have confirmed that *Walton*'s directive to seek out the services of a medical advisor is limited to situations where the underlying disease is progressive and difficult to diagnose, where the alleged onset date is far in the past, and where medical records are sparse or conflicting."); *see also Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 205 (3d Cir. 2008) ("we have generally applied SSR 83–20 only where medical evidence from the relevant period is unavailable"); *Kirk v. Comm'r of Soc. Sec.*, 177 Fed. App'x 205, 208-09 (3d Cir. 2006) (finding *Walton* inapplicable where plaintiff's claim of earlier onset created a time period of only

three years and where medical evidence for relevant period supported ALJ's conclusion regarding onset date).

In the more usual case, however, a medical expert is not required. The Third Circuit has held that an ALJ can reasonably determine an onset date where the ALJ has access to adequate medical records relating to the time period before the expiration of the claimant's insured status. *Jakubowski v. Comm'r of Soc. Sec.*, 215 Fed. Appx. 104, 108 (3d Cir. 2007) ("By contrast with *Newell* and *Walton* . . . the ALJ in this case had access to adequate medical records from the time period before the expiration of Jakubowski's insured status, and these records did not support her alleged onset date.").

By way of reminder, Rodriguez alleged a February 23, 2012 onset date. Rodriguez has failed to allege that this onset date "is far in the past." *See Bailey*, 354 F. App'x at 618 (3d Cir. 2009). Moreover, the parties do not seem to dispute the onset date, and there are sufficient medical records that were from the relevant time period. Accordingly, the ALJ was not required to obtain testimony from a medical advisor. *See Holmes v. Colvin*, Civil Action No. 14-7824 (JLL), 2015 U.S. Dist. LEXIS 123441, at *19 (D.N.J. Sep. 14, 2015).

In any event, Rodriguez's contentions regarding the onset date of her diabetes and hypertension are easily disposed of — the ALJ never found that that these two impairments were "severe," so their "onset date" was not central to the case. *See Zirnsak*, 777 F.3d at 613 (SSR 83-20 only applies "when establishing the onset date of disability, not whether disability exists." (internal quotation omitted)); *Taliaferro v. Comm'r of Soc. Sec.*, No. 2:12-cv-06087 (KM), 2013 U.S. Dist. LEXIS 136546, at *21 (D.N.J. Sep. 24, 2013) (finding ALJ properly did not seek medical advisor where ALJ did not determine impairment was "severe," and therefore, "its 'onset date' was not central to the case.").

The determination of non-severity is supported by substantial evidence in the record. Regarding Rodriguez's diabetes, Rodriguez had been diagnosed with diabetes mellitus prior to the DLI and treatment records indicated "uncontrolled" blood sugars at times, however, "no limitations were associated."

(R. 26, 318-20). Rodriguez was never hospitalized because of her diabetes, nor did she suffer from any organ damage, neuropathy, retinopathy, or any other clinical abnormalities. (*Id.*). As for Rodriguez's hypertension, the medical evidence in the record established that Rodriguez's hypertension was "essentially controlled." (*Id.*). Rodriguez was not hospitalized, has not suffered from organ damage, and examination revealed normal findings. (*Id.*).

The ALJ never determined that Rodriguez's back impairment was not severe. (*See* R. 25-26). Instead, the ALJ determined that there was insufficient medical evidence in the record to establish a medically determinable impairment prior to the DLI. (R. 25). The medical evidence regarding Rodriguez's back issues can be summarized as follows:

Rodriguez first reported back pain to a medical provider on March 1, 2011; an examination revealed no abnormal findings. (R. 25, 342-43). This complaint of pain is approximately eleven months before her alleged onset date and one year before her DLI. Rodriguez repeatedly denied back pain in subsequent doctor's visits. (*See* R. 308 (8/16/2012); 314 (04/05/2012); 348 (01/24/2013)). That is where the record stood as of the date last insured, March 31, 2012

On March 5, 2013, nearly a year *after* the DLI, Rodriguez complained a second time, stating that she had had lower back pain for two weeks. (R. 25, 288-89). Medical imaging from March 6, 2013, almost a year after the March 31, 2012 DLI, revealed that Rodriguez had spondylosis and "degenerative changes with facet hypertrophy causing neural foraminal encroachment at L5-S2." (R. 408; R. 25).

Post-DLI evidence may be relevant to the claimant's condition before that date. Nevertheless, this record does not demonstrate that Rodriguez became functionally limited due to her back impairment at any time before her date last insured. The first piece of objective medical evidence that establishes a back impairment is almost one year after the DLI. (*See* R. 408); *Brent v. Comm'r of Soc. Sec.*, No. 17-12654, 2018 U.S. Dist. LEXIS 159118, at *21-24 (E.D.

Mich. Aug. 21, 2018) (affirming ALJ's determination that claimant's back pain was not a medically determinable impairment where claimant frequently complained of back pain in relevant period, but did not obtain CT Scan until six months after DLI), *adopting R&R*, 2018 U.S. Dist. LEXIS 157841 (E.D. Mich. Sept. 17, 2018). There was no evidence to demonstrate that this condition had risen to the level of a severe impairment a year prior to that date. Apparently it had not been serious enough to cause the claimant to seek medical attention at any time since the prior exam in 2011, which did not disclose a severe condition.

Finally, any error at Step 2 is harmless. Where an ALJ finds in a claimant's favor with respect to at least one impairment, the disability analysis continues to Step 3, regardless of whether another impairment was erroneously found non-severe. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 149 n.2 (3d Cir. 2007). Where the disability analysis continues to step three, the ALJ must continue to consider the effects of all medically determinable impairments, regardless of severity. *Kerdman v. Colvin*, No. 13-04216, 2014 WL 3783872, at *8 (D.N.J. July 30, 2014). Thus, where the disability analysis continues to Step 3, an ALJ's erroneous determination of an impairment's non-severity may constitute harmless error, provided that the impairment continues to be factored in. *See Salles*, 229 F. App'x at 145 n.2 ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.") (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)).

In sum, because there has been no finding of disability in this case, SSR 83-20 is inapplicable and a medical advisor for hearing purposes was neither required nor necessary. *Cf. Jakubowski*, 215 F. App'x at 108 ("By contrast with *Newell* and *Walton*, . . . the ALJ in this case had access to adequate medical records from the time period before the expiration of Jakubowski's insured status and these records did not support her alleged onset date.").

### C. Evaluation of "Severe" And "Non-Severe" Impairments in Formulating the RFC

Rodriguez contends that the ALJ failed to properly consider all of her "severe" and "non-severe" impairments in formulating her RFC. (PBr. at 28-32). Rodriguez claims that this failure by the ALJ resulted in an improper finding that Rodriguez has no physical limitations. (PBr. at 29).

"Between steps three and four, the ALJ is required to assess all of the claimant's impairments - even ones that are not 'severe' - in combination, when making the RFC determination." *Kalb v. Comm'r of Soc. Sec.*, Civ. No. 17-5262 (JBS), 2018 U.S. Dist. LEXIS 214905, at *25 (D.N.J. Dec. 21, 2018) (citing 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."); *see Marsella v. Comm'r of Soc. Sec.*, Civil Action No. 18-2294 (JBS), 2019 U.S. Dist. LEXIS 28995, at *32 (D.N.J. Feb. 25, 2019). The ALJ must apply SSR 96-8p, which provides:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments --be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

1996 SSR LEXIS 5, *14-15.

The ALJ must consider all relevant evidence when determining an individual's RFC. *See Fargnoli v. Halter*, 247 F.3d 34, 41 (3d Cir. 2001). Plaintiff bears the burden in the first four steps of the analysis of demonstrating how his impairments, whether individually or in combination, amount to a qualifying disability. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The ALJ's RFC finding in this case was "based on the objective medical evidence and the claimant's testimony." (R. 31). In particular, the ALJ relied upon the opinions of the physicians of the state agency, who the ALJ recognized as experts in Social Security disability evaluations. (*Id.*). The ALJ determined that the objective medical evidence in the record prior to the DLI did not support a physical limitation. (*Id.*).

Prior to determining Rodriguez's RFC, the ALJ expressly noted that Rodriguez was claiming a disability based on multiple conditions: "depression, sleeping problems, high blood pressure, pain and arthritis in her back." (R. 28). Rodriguez specifically testified that she was unable to work "due to her depression and diabetes." (R. 28).

The ALJ took Rodriguez's testimony regarding these issues, and her physical limitations. The ALJ recognized that Rodriguez testified that she had "pain" in her back, but that that pain subsided with "medication." (R. 28).

Rodriguez testified that she was hospitalized for her diabetes two or three years prior, but she had started taking insulin just seven months prior to the hearing. (R. 28). Treatment records indicated that "no limitations were associated" with her diabetes. (R. 26).

Rodriguez testified to the following physical abilities: comfortably lift 20 pounds, stand 15-20 minutes, walk 20 minutes and sit 20-25 minutes. (R. 28).

Based on the objective medical evidence, however, the ALJ determined that Rodriguez's statements were not consistent with the objective medical evidence in the record. (R. 28). The ALJ relied upon the state agency's physicians who determined that the record does not support a physical limitation prior to the DLI. (R. 31, 82-89, 91-99).

In sum, the ALJ considered Rodriguez's alleged impairments and their resultant limitations, and ultimately determined that they were not supported by the record.

### D. ALJ's Construction of Hypothetical to VE

Rodriguez's final argument is that the ALJ's construction of the hypothetical to the VE failed to incorporate her "credibly" established back,

hypertensive, diabetic, or mental limitations. (PBr. at 32-38). Rodriguez further contends that the ALJ's instruction to the VE, limiting Rodriguez to "simple routine" tasks, does not adequately convey "moderate difficulties" in concentration, persistence, or pace. (PBr. at 37).

"It is well-settled that the law only requires the ALJ to include limitations supported by the record in her hypothetical question to the vocational expert." *Kreuzberger v. Astrue*, Civ. No. 07-529, 2008 U.S. Dist. LEXIS 45224, at *26 (W.D. Pa. June 9, 2008) (citing *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *Podedworny*, 745 F.2d at 218). Moreover, an ALJ is only required to accept testimony from a vocational expert which accurately reflects a plaintiff's limitations. *See Chrupcala*, 829 F.2d at 1276; *Podedworny*, 745 F.2d at 218. Accordingly, "[w]hen a hypothetical question meets that requirement, and is supported by substantial evidence, expert vocational testimony suffices as substantial evidence supporting a Step 5 finding." *Walker v. Colvin*, No. 5:12-483, 2013 U.S. Dist. LEXIS 139747, at *14 (N.D.N.Y. June 19, 2013) (citing *Mancuso v. Astrue*, 361 Fed. App'x 176, 179 (2d Cir. 2010); *Salmini v. Commissioner of Soc. Sec.*, 371 Fed. App'x 109, 114 (2d Cir. 2010); *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004)).

Moreover, the law does not require the ALJ to address every piece of evidence in her decision. Rather, the Third Circuit has stated, "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see also Pintal v. Comm'r of Soc. Sec.*, 602 F. App'x 84, 88 (3d Cir. 2015) ("an ALJ is not required to cite every piece of evidence in the record.").

Here, the record reveals substantial evidence that the hypothetical questions the ALJ posed to the vocational expert accurately reflected Rodriguez's credibly established limitations. As explained above, the medical

evidence in the record established that Rodriguez's back issues, diabetes, and hypertension were not limiting or severe, at least prior to the DLI.

Regarding Rodriguez's mental functioning, the ALJ determined that during the five-week relevant period, Rodriguez had moderate difficulties in concentration, persistence, and pace. (R. 27). First, I conclude that these findings are supported by substantial evidence in the record. The ALJ cited the objective evidence demonstrating that during mental status examinations, Rodriguez exhibited goal directed thought processes, intact thought content, intact attention and concentration, and fair insight and judgment, and that she was alert and oriented in all spheres. (R. 28, 449-50, 453-54, 457-58, 461-62, 465-66, 469, 471, 494, 498, 502). After initially seeking treatment for depression in September of 2009, Rodriguez subsequently reported being "mildly" depressed, and enjoying improved mood. (R. 432, 442, 445). Rodriguez reported that cooks daily, cleans her house for 2-5 hours daily, shops, regularly reads, and watches television. (R. 260-62). She has traveled on extended vacations on multiple occasions (R. 31, 259-62, 429. 472).

The next question is whether the ALJ's restriction in the hypothetical to "simple routine tasks" accurately conveys Rodriguez's moderate difficulties in maintaining concentration, persistence or pace. I conclude that the ALJ's construction of the hypothetical was appropriate.

Rodriguez cites the Third Circuit's decision in *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004). In that case, "Ramirez 'often' experienced 'deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner (in work settings or elsewhere).'" *Id.* at 549. The hypothetical presented expressed these limitations as follows: "The work should involve simple one to two step tasks." *Id.*

While *Ramirez* is relevant, it is so factually distinguishable as to preclude any simple application. Courts have since recognized that a limitation to "simple, routine tasks" appropriately accounted for moderate limitations in concentration, persistence, and pace. *See Menkes v. Astrue*, 262 F. App'x 410,

412 (3d Cir.) ("Having previously acknowledged that Menkes suffered moderate limitations in concentration, persistence and pace, the ALJ also accounted for these mental limitations in the hypothetical question by restricting the type of work to 'simple routine tasks.'"), *cert. denied*, 555 U.S. 1055, 129 S. Ct. 644, 172 L. Ed. 2d 626 (2008); *McDonald v. Astrue*, 293 F. App'x 941, 946 (3d Cir. 2008) ("in line with her finding that McDonald only had 'moderate limitations with his ability to maintain concentration, persistence and pace,' the ALJ included in her hypothetical that the individual be limited to 'simple, routine tasks.'"). In both these nonprecedential cases, which I take as a guide, the Third Circuit held that a limitation to "simple routine tasks" adequately reflected moderate limitations of the ability to maintain concentration, persistence and pace.

Rodriguez does not identify any specific limitations related to concentration, persistence, or pace that the ALJ failed to consider in the RFC. *Cf. Durden v. Colvin*, 191 F. Supp. 3d 429, 459 (M.D. Pa. 2016) (explaining that claimant cannot just state that since "the ALJ found Plaintiff to have [a] moderate limitation in concentration, persistence, and pace, [that] the RFC was automatically incomplete" and pointing out how claimant failed "to perform the extra analysis required by *Ramirez* to indicate she had 'clearly established in the record additional, specific deficiencies in concentration, persistence and/or pace that could not be adequately conveyed' by the hypothetical") (quoting *Santiago-Rivera v. Barnhart*, Civ. No. 05-5698, 2006 WL 2794189, at *11 (E.D. Pa. Sept. 26, 2006)). Consequently, remand is unwarranted in this case.

This Court has reviewed the ALJ's decision and finds that the ALJ's decision is supported by substantial evidence. Rodriguez has failed to persuade this Court that the ALJ erred in her decision.

## IV.   Conclusion

For the foregoing reasons, the ALJ's decision is affirmed. An appropriate order accompanies this Opinion.

Dated: March 1, 2019

**KEVIN MCNULTY**
**United States District Judge**